IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES W. ADEE, | : | CIVIL NO. 1:CV-11-0035 |
| Plaintiff, | : | |
| | : | (Chief Judge Kane) |
| v. | : | |
| | : | |
| JEFFREY BEARD, et al., | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff James W. Adee ("Adee") filed this civil rights action pursuant to 42 U.S.C. § 1983. At the time, he was confined at the State Correctional Institution at Coal Township (SCI-Coal Township), Pennsylvania.[1]  Named as Defendants in the complaint are various Pennsylvania Department of Corrections officials, as well as SCI-Coal Township officials and employees.[2]  Adee claims that Defendants violated his right to adequate medical care under the Eighth Amendment with respect to an ankle injury he sustained on August 16, 2010, while confined at SCI-Coal Township, and his requests for treatment thereafter. He also sets forth conspiracy and state law claims.  He seeks compensatory, punitive and equitable relief.  Presently pending are a motion to dismiss filed by the Corrections Defendants (Doc. No. 18), and a motion to dismiss filed by the Medical Defendants (Doc. No. 29).  Despite warnings issued to Plaintiff, no briefs in opposition to the motions have been submitted.  For the reasons that follow, the

---

[1] Adee notified the Court on February 11, 2011, that he has been released from prison and is now residing at 512 North High Street, Selingsgrove, Pennsylvania, 17870.  (Doc. No. 13.)

[2] Named as Defendants are DOC officials Jeffrey Beard, former Secretary; Richard Ellers, Health Care Administrator; and Dorina Varner, Chief Grievance Coordinator.  Also named are SCI-Coal Township employees Kathy McCarty, Health Care Administrator; Jane Doe, Correctional Officer; Physician Assistants Daya and Davis; Ms. Ellett, Deputy Superintendent; Doctors Michael Weisner and Stan Stanish; Superintendent David Varner; Grievance Officer Dascani; and other Doe Defendants.

motions will be deemed unopposed and granted.

I.  **Allegations in the complaint**

Plaintiff alleges that on the evening of August 16, 2010, he seriously injured his right ankle in the exercise yard. Later the same night, he states his ankle was swollen and caused him extreme pain. He was also unable to bear weight on the ankle. He contacted Defendant Doe, a correctional officer working on his housing unit. Doe refused to contact the medical department as requested by Plaintiff but one hour later provided Plaintiff with a sick call slip to sign up to be seen. He told Plaintiff he would be fine until that time.

The following day, Plaintiff was still unable to bear weight on his ankle and obtained crutches. He also attended sick call on this date and was seen by Defendant Daya. Daya ordered x-rays and Motrin. He also provided Plaintiff with a 600 milligram tablet of Motrin to take while at sick call. According to Plaintiff, when he later attended pill line he was advised that no medication had been ordered for him.

On August 19, 2010, an x-ray of Plaintiff's ankle was performed and the technician believed the ankle was either broken or something was torn. Plaintiff sent Defendant Ellett a request slip complaining about his pain and that he had only received one Motrin. (Doc. No. 1, Compl. at 34.)

On August 20, 2010, Plaintiff again attended sick call. He was examined by Defendant Davis and complained of severe pain and how no pills had been ordered for him. Davis provided Plaintiff with a blister pack of Motrin. On August 22, 2010, Plaintiff sent a request slip to Defendant McCarty inquiring as to the results of his x-ray, and complaining about his pain and the competency of the medical staff at SCI-Coal Township. (Id. at 35.) The following day,

another request slip was sent to McCarty wherein Plaintiff complained of pain and numbness and requested to be seen by a doctor. (Id. at 36.)

On August 26, 2010, Plaintiff attended sick call where he was examined by Defendant Davis. Davis informed him that the x-rays revealed no fracture, but did show soft tissue damage. Davis instructed Plaintiff to begin bearing weight on the ankle and to do motion exercises. Davis also provided Plaintiff with Motrin. Plaintiff claims he was unable to bear weight or do the exercises because of the pain. On August 30, 2010, he sent another request slip to McCarty asking to be seen by a doctor. (Id. at 37.) He was examined on September 1, 2010 at sick call by Davis, and prescribed Naprison.

On September 9, 2010, he sent a request slip to McCarty asking to be seen by another doctor for a second opinion. (Id. at 38.) On the same date, Plaintiff attended sick call complaining of pain and numbness and requesting an M.R.I. He sent McCarty another request slip on September 15, 2010 complaining that the physicians assistants would not refer him to a doctor. On the same date, he also sent a request slip to Defendant Ellett complaining of numbness, burning and the inability to bend several of his toes. (Id. at 40.)

On September 22, 2010, Plaintiff was summoned to the medical department for "M.D. Line." He was examined by Dr. Weisner. Weisner told Plaintiff he thought he had nerve damage. Plaintiff was again requested at M.D. Line on September 24, 2010, and examined by Weisner. Weisner told Plaintiff he would order more Naproxen and order a consult for him with an orthopaedic surgeon.

On October 5, 2010, Plaintiff attended sick call with complaints of pain, numbness and swelling. He was examined by Dr. Stanish who renewed his medical order for crutches until

October 31, 2010. On October 12, 2010, Plaintiff was requested in the medical department for a televised medical appointment with Dr. Kunkle. Kunkle informed Plaintiff that he had cartilage damage, and requested P.A. Daya to show Plaintiff some physical therapy stretches with rubber bands. According to Plaintiff, Daya never did so or provided him with any bands. On October 20, 2010, Plaintiff sent a request slip to McCarty asking when he would receive the physical therapy. A week later, the same request was sent to Defendant Ellett. (Doc. No. 1, at 41- 42.)

Plaintiff was transported to Dr. Kunkle's office in Ashland, Pennsylvania on November 1, 2010, where he received three (3) injections in his foot. He was told to return in one (1) month, to start physical therapy, and soak his foot in warm water every day. He further told Plaintiff that when he injured his ankle he should have iced, stabilized or casted it immediately, and that walking on it may have caused more damage.

On November 2, 2010, Plaintiff sent McCarty a request slip inquiring about when therapy would begin and advising her about the need to soak his foot and his need for follow-up with Kunkle in a month. McCarty responded by informing Plaintiff he could do the soaks in his cell. Plaintiff claims that there is nothing that would allow him to do so.

On November 7, 2010, Plaintiff attended sick call to obtain more pain medication. He was examined by P.A. Davis who told him to "get what you need when you get out." (Doc. No. 1, ¶ 26.) On the same date, Plaintiff was summoned to intake for transportation to SCI-Mahanoy where he was taken to see a physical therapist. The therapist told Plaintiff his ankle was probably broken and that he should have iced it after it happened. Plaintiff was shown some stretching exercises and told to ride a stationary bike and use a stair stepper.

On November 13, 2010 Plaintiff was provided with ice at pill line, and on November 16,

2010 he had another televised appointment with Dr. Kunkle. When Plaintiff complained of pain, swelling and numbness, Kunkle advised him to wear a support brace/shoe and do warm water soaks. Daya was advised by Kunkle to provide Plaintiff with a brace. Although Daya said he would look for a brace or have one ordered, Plaintiff claims he never received one.

On December 19, 2010, a request slip was sent by Plaintiff to Defendant Ellett asking for his help in obtaining an ankle brace. (Id. at 52, 53.) On December 22, 2010, a request slip was also sent to Defendant Beard asking him to intervene to ensure that Plaintiff received proper medical care. (Id. at 54.) Plaintiff contends that various independent health providers selected by the DOC thereafter recommended further tests and evaluations of his condition, but that Defendants failed to approve or allow the same. Based upon the foregoing, Plaintiff contends that he did not receive proper treatment for his ankle and that this failure created further damage and problems resulting in his inability to use his toes and ankle properly. He maintains that the condition of his injury was obvious and could have been effectively treated if done so promptly by Defendants. As of the filing of the complaint, he maintains he still has not received all treatments recommended for his condition. Plaintiff claims that his right to adequate medical care under the Eighth Amendment has been violated and also that Defendants were negligent with respect to his care. He further alleges that Defendants engaged in a conspiracy to deprive him of medical care as well as subjected him to the intentional and negligent infliction of emotional distress in violation of state law.

## II.   Motion to Dismiss Standard

Fed. R. Civ. P. 12(b)(6) authorizes the dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), the court must "accept all factual

allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)(quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). The court is not limited to evaluating the complaint alone. It may also consider documents attached to the complaint and matters of public record. McTernan v. City of York, 577 F.3d 521, 526 (3d Cir. 2009)(citing Lum v. Bank of America, 361 F.3d 217, 221 n.3 (3d Cir. 2004)).

While a complaint need only contain "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), to survive a motion to dismiss a complaint has to plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)(quoting Twombly, 550 U.S. at 556). "[L]abels and conclusions" are not enough, Twombly, 550 U.S. at 555, and a court "'is not bound to accept as true a legal conclusion couched as a factual allegation.'" Id., 127 S. Ct. at 1965 (quoted case omitted).

In resolving a motion to dismiss, the court conducts "a two-part analysis." Fowler, 578 F.3d at 210. First, the court separates the factual elements from the legal elements and disregards the legal conclusion. Id. at 210-11. Second, the court "determine[s] whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief.'" Id. at 211 (quoted case omitted).

However, '[a] document filed *pro se* is to be liberally construed," Erickson v. Pardus, 551

6

U.S. 89, 94 (2007)(quoted case and internal quotation marks omitted), and " a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Id., 127 S. Ct. at 2200 (quoted case and internal quotation marks omitted). Pro se litigants are to be granted leave to file a curative amended complaint "even when a plaintiff does not seek leave to amend," unless such an amendment would be inequitable or futile. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). But a complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. Grayson v. Mayview State Hospital, 293 F.3d 103, 106 (3d Cir. 2002).

In the instant case, Plaintiff has failed to oppose Defendants' motions to dismiss despite being warned to do so by the Court. On July 21, 2011, he was directed to file a brief in response to the Corrections Defendants' motion to dismiss within fourteen (14) days, and that the failure to comply with this directive may result in the granting of the motion or the dismissal of the case for failure to prosecute. (Doc. No. 21). Plaintiff failed to file any opposition to the motion. On September 22, 2011, a similar order was issued after Plaintiff also failed to respond to the motion to dismiss filed by the Medical Defendants. (Doc. No. 31.) Again, Plaintiff failed to submit any opposition to the pending motions to dismiss. Accordingly, the Court will deem the motions unopposed and address them on the merits.

### III. Discussion

#### A. Motion to Dismiss by Corrections Defendants

The Corrections Defendants move to dismiss the complaint against them on multiple grounds. They first maintain that any claims against them for money damages in their official capacities are barred by the Eleventh Amendment. The Court agrees. It is well settled that suits

for damages by individuals against state governments, state agencies, or state officers acting in their official capacities are barred by the Eleventh Amendment. See Kentucky v. Graham, 473 U.S. 159, 165-67 (1985)(holding that claims for damages against a state officer acting in his official capacity are barred by the Eleventh Amendment); Chittister v. Dep't of Community & Economic Dev., 226 F.3d 223, 226 (3d Cir. 2000)(holding that individuals are barred from seeking monetary damages from state governments or state agencies). In Bey v. Pennsylvania Department of Corrections, 98 F. Supp. 2d 650, 657 (E.D. Pa. 2000), the court summarized the applicable law as follows:

> [t]he Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. Thus, under the Eleventh Amendment, absent express consent by the state in question or a clear and unequivocal waiver by Congress, states are immune from suit in federal court. See Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996).

Id.; see also Koslow v. Commonwealth of Pennsylvania, 302 F.3d 161 (3d Cir. 2002).

No exceptions to Eleventh Amendment immunity are applicable in the instant case. The Commonwealth of Pennsylvania has not consented to be sued. See 42 Pa. Con. Stat. Ann. § 8521(b). Congress has not expressly abrogated Pennsylvania's Eleventh Amendment immunity from civil rights suits for damages. As such, any claims for monetary damages against the Corrections Defendants in their official capacities are subject to dismissal.

The Corrections Defendants also seek their dismissal from this action on the basis of lack of personal involvement. In order to prevail in a § 1983 action, Plaintiff must establish two elements: (1) that the conduct complained of was committed by a person acting under color of

state law; and (2) that the conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States. Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006); Kost v. Kozakiewicz, 1 F.3d 176, 184 (3d Cir. 1993).

Section 1983 liability cannot be predicated solely on respondeat superior. Rizzo v. Goode, 423 U.S. 362 (1976); Rode v. Dellarciprete, 845 F.2d 1195,1207 (3d Cir. 1988). Individual liability can only be imposed if the state actor played an "affirmative part" in the alleged misconduct. Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." Rode, 845 F.2d at 1208, quoting Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991). Moreover, if an official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official. Rode, 845 F.3d at 1208; Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006). Further, simply alleging that an official failed to respond to a letter or request Plaintiff may have sent raising complaints is not enough to demonstrate they had the requisite personal involvement. See Rivera v. Fischer, 655 F. Supp. 2d 235 (W.D.N.Y. 2009)(Finding that many courts have held that merely writing a letter of complaint does not provide personal involvement necessary to maintain a § 1983 claim.) In addition, to the extent Plaintiff seeks to impose liability on any of the Corrections Defendants due to their involvement in responding to his grievances, he also fails to state a claim.

Corrections Defendants also argue that Plaintiff has failed to set forth viable Eighth Amendment inadequate medical care claims against them. The Eighth Amendment "requires

9

prison officials to provide basic medical treatment to those whom it has incarcerated." Rouse v. Plantier, 182 F.3d 192,197 (3d Cir.1999)(citing Estelle v. Gamble, 429 U.S. 97 (1976)).  In order to establish a violation based on the Eighth Amendment, "evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need."  See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004); Natale v. Camden County Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003).

     A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).  The "deliberate indifference" standard is a stringent standard of fault requiring proof that a defendant disregarded a known or obvious consequence of his action.  Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397, 410 (1997).  The defendant must be both aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw the inference.  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  The test for whether a prison official was deliberately indifferent is whether that defendant "acted or failed to act despite his knowledge of a substantial risk of serious harm."  Id. at 841.  Only egregious acts or omissions can violate this standard.  See White v. Napoleon, 897 F.2d 103, 108-10 9 (3d Cir. 1990).

     A complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment . . . ."  Estelle, 429 U.S. at 106.  "Allegations of medical malpractice are not sufficient to establish a Constitutional violation."  Spruill, 372 F.3d at 235.  An inmate's

disagreement with medical treatment also does not rise to the level of "deliberate indifference." See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993); Boring v. Kozakiewicz, 833 F.2d 468, 473 (3d Cir. 1987).

Defendants maintain that Plaintiff's own allegations and exhibits attached to the complaint demonstrate the consistent treatment he received for his ankle injury. While he clearly did not agree with the treatment received and desired different and additional treatment, the mere disagreement with treatment received does not state a claim of deliberate indifference under the Eighth Amendment. See Durmer, 991 F.2d at 69. Further, even taking his allegations as true with respect to a difference of opinion between medical professionals as to the proper method of treatment for Plaintiff's injury, this still fails to rise to the level of deliberate indifference. Bacon v. Carroll, 232 F. App'x 158, 160 (3d Cir. 2007). Differing medical opinions of prison doctors will not support an Eighth Amendment inadequate medical care claim. Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980), cert. denied, 450 U.S. 1041 91981). The allegations in the complaint reveal that Plaintiff received constant examination, evaluation and treatment from the time he sustained his injury. Any negligent misdiagnosis or inadvertent failure to provide certain care does not state a valid claim of deliberate indifference. In addition, any claims of unsuccessful medical treatment also do not state a claim under the Eighth Amendment. Moreover, in Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993), the Third Circuit Court of Appeals found that non-physician defendants, such as the Corrections Defendants in the instant case, cannot be considered deliberately indifferent for failing to respond to an inmate's medical complaints when he is receiving treatment by the prison's medical staff. Absent actual knowledge or a reason to believe that prison doctors or their staff are failing to treat or are

mistreating an inmate, a mon-medical prison official will not be found to be deliberately indifferent under the Eighth Amendment. After reviewing the complaint in the light most favorable to Plaintiff, it is evident that he merely disagreed with the treatment received and believed different or additional treatment was warranted. Such claims fail to rise to a violation of the Eighth Amendment.

To the extent the complaint can be construed to raise a conspiracy claim, the Corrections Defendants move for dismissal for failure to state any such claim. In order to set forth a cognizable conspiracy claim, a plaintiff cannot rely on broad or conclusory allegations. D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch., 972 F.2d 1364, 1377 (3d Cir. 1992); Rose v. Bartle, 871 F.2d 331, 366 (3d Cir. 1989); Durre v. Dempsey, 869 F.2d 543, 545 (10th Cir. 1989). The Third Circuit has noted that a civil rights conspiracy claim is sufficiently alleged if the complaint details the following: (1) the conduct that violated the plaintiff's rights, (2) the time and place of conduct, and (3) the identity of the officials responsible for the conduct. Oatess v. Sobolevitch, 914 F.2d 428, 432 n. 8 (3d Cir. 1990). The essence of a conspiracy is an agreement or concerted action between individuals. See D.R. by L.R., 972 F.2d at 1377; Durre, 869 F.2d at 545. A plaintiff must therefore allege with particularity and present material facts which show that the purported conspirators reached some understanding or agreement or plotted, planned and conspired together to deprive plaintiff of a protected federal right. See id.; Rose, 871 F.2d at 366. A plaintiff cannot rely on subjective suspicions and unsupported speculation. Young v. Kann, 926 F.2d 1396, 1405 n. 16 (3d Cir. 1991). Plaintiff's conclusory allegations of conspiracy without any supporting facts fail to state a claim against Defendants. This claim is also subject to dismissal.

**B.      Medical Defendants' Motion to Dismiss**

Physician Assistants Daya and Davis and Doctors Weisner and Stanish ("Medical Defendants") also move to dismiss Plaintiff's complaint.  They first maintain that Plaintiff fails to state any claim of deliberate indifference against them.  In support of their motion, they argue that the complaint itself undermines Plaintiff's position that he was denied adequate medical care in violation of the Eighth Amendment.  Rather, it demonstrates that following his injury on August 16, 2010, he was seen the very next day and examined by Daya, who ordered x-rays and provided medication for pain and swelling.  The x-ray was performed on August 19, 2010, and Plaintiff was examined again and provided additional medication the following day by Defendant Davis.  Davis examined Plaintiff again on August 26, 2010, and provided him with the results of the x-ray which were negative.  Plaintiff was given a wrap bandage and medication, and was told to begin bearing weight and doing exercises.  He was again examined by Davis on September 1, 2010, and given a different medication called Naproxen.

Dr. Weisner examined Plaintiff on September 22 and 24, 2010, and provided medication and ordered a consult with an orthopaedic doctor.  Dr. Stanish evaluated him on October 5, 2010, and renewed Plaintiff's order for crutches.  Plaintiff had a teleconsult with the orthopaedic surgeon on October 12, 2010, and was taken to see him on November 1, 2010.  At this visit, he received injections and instructions for physical therapy.

On November 7, 2010, Plaintiff was examined again by Daya, and was also assessed by a physical therapist who instructed him on exercises.  On November 13, 2010, he was provided with ice.  Plaintiff was again seen by the orthopaedic surgeon on November 16, 2010, where he was told to continue with warm soaks and wear a supprt brace or shoe.  Daya told Plaintiff she

would look for a brace or order one.  Plaintiff contends that he never did receive a brace.

In the complaint, Plaintiff does not agree that the treatments he received were adequate.  He contends, for example, that he should have been provided with ice following the initial injury, and that an MRI and second opinions should have been ordered during the course of his treatment.  He also appears to allege that other individuals recommended further tests and evaluations of his condition, but that Defendants failed to approve or allow the same.

In considering the allegations set forth against the Medical Defendants in light of the Eighth Amendment principles set forth above, it is clear that Plaintiff fails to set forth any viable inadequate medical care claim.  The complaint details the continuous care and treatment Plaintiff received at SCI-Coal Township for the ankle injury sustained on August 16, 2010.  During the course of a three (3) month period, Plaintiff was examined numerous times by physician assistants, doctors, the orthopaedic surgeon and a physical therapist.  He was provided with x-rays, ice, crutches, an ACE bandage, medications, consultation and examination by a specialist and physical therapy.  Plaintiff's allegations amount to nothing more than his disagreement and dissatisfaction with the adequacy of the care he received, and his desire for other methods of treatment.  There are no allegations in the complaint which amount to acts or omissions on the part of Defendants that indicate deliberate indifference to Plaintiff's serious medical need.  At best, Plaintiff alleges negligence on the part of Defendants with respect to the diagnosis and treatment of his condition which is not actionable under the Eighth Amendment.  See Estelle, 429 U.S. at 106.  For these reasons, the Eighth Amendment medical claims will be dismissed.

To the extent Plaintiff attempts to set forth a retaliation claim against the Medical Defendants, he also fails to state a claim.  To state a valid claim for retaliation, a prisoner must

show that: (1) he or she was engaged in constitutionally protected conduct; (2) an adverse action was taken by prison officials "sufficient to deter a person of ordinary firmness from exercising his or her [constitutional] rights;" and (3) there was a causal relationship between the foregoing two (2) elements. Rauser v. Horn, 241 F.3d 330, 333-34 (3d Cir. 2001)(quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). Even if an inmate demonstrates that his or her exercise of a constitutional right was a substantial or motivating factor in the challenged decision, "the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Id. at 334.

Plaintiff fails to meet this burden in every respect. Other than simply alleging that Defendants retaliated against him, he asserts no factual allegations that he was engaged in constitutionally protected conduct or that the medical care decisions made by Defendants in any way deterred him from exercising any constitutionally protected rights. There are no averments in the complaint to even suggest the elements required to state a retaliation claim. For these reasons, this claim will also be dismissed.

### C. Ancillary State Law Claims

This Court will not exercise jurisdiction over any of Plaintiff's ancillary state law negligence, malpractice and emotional distress claims that he may wish to pursue against Defendants. In a case such as this, where the jurisdiction of the federal court was premised on an alleged federal civil rights violation which is found not to state a cause of action upon which relief can be granted, the Court has observed that the proper course is for the Court to decline to exercise supplemental jurisdiction over the Plaintiff's state law claims. 28 U.S.C. § 1367(c)(3)

("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if the district court has dismissed all claims over which it has original jurisdiction."); United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)(holding that when federal causes of action are dismissed, federal courts should not separately entertain pendent state claims).

This Court recognizes that pro se plaintiffs should be afforded the opportunity to amend a complaint before the complaint is dismissed in its entirety unless it is clear that granting further leave to amend would be futile, or result in undue delay. Alston, 363 F.3d at 235. However, since Plaintiff has failed to state a viable cause of action, and the factual and legal grounds proffered by him in support of the complaint make it clear that he has no right to relief, granting further leave to amend would be futile or result in undue delay.[3] Id. As such, this case will be dismissed in accordance with the above. An appropriate order is attached.

---

[3] This is further bolstered by the fact that Plaintiff has failed to file any opposition to the pending motions to dismiss despite being warned to do so twice by this Court.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES W. ADEE,** | : | CIVIL NO. 1:CV-11-0035 |
| Plaintiff, | : | |
| | : | (Chief Judge Kane) |
| v. | : | |
| | : | |
| **JEFFREY BEARD, et al.,** | : | |
| Defendants | : | |

# ORDER

**AND NOW**, this 6th day of February 2012, **IT IS HEREBY ORDERED THAT:**

1. The motion to dismiss filed by the Corrections Defendants (Doc. No. 18) is **deemed unopposed and is granted.** All claims set forth against said Defendants with the exception of the state law claims are dismissed in their entirety.

2. The motion to dismiss filed by the Medical Defendants (Doc. No. 29) is **deemed unopposed and is granted**. All claims set forth against said Defendants with the exception of the state law claims are dismissed in their entirety.

3. Plaintiff's remaining state law claims are **dismissed without prejudice** to Plaintiff pursuing said claims in state court should he choose to do so.

4. The Clerk of Court is directed to **close this case**.

5. Any appeal from this order is deemed frivolous and not taken in good faith. See 28 U.S.C. § 1915(a)(3).


_____
YVETTE KANE, Chief Judge
Middle District of Pennsylvania